GRAY *et al. v.* GEORGIA REAL ESTATE
COMMISSION *et al.*

No. 17917. Argued June 9, 1952—Decided July 14, 1952—
Rehearing denied July 28, 1952.

*Myrick & Myrick* and *Casper Wiseman*, for plaintiffs in error.
*Eugene Cook, Attorney-General, R. L. Addleton, Assistant Attorney-General, Hugh Carney* and *Sylvan Garfunkel*, contra.

DUCKWORTH, Chief Justice. The following matters might constitute an insuperable barrier to the maintenance of this action, to wit: (1) is the commission a legal entity authorized

by law to sue as such; (2) do the individual members of the commission have such interest in the subject matter as would entitle them to sue; (3) is the penalty for failure to procure a license as fixed by the act, which is the denial of a right to sue for compensation, the sole penalty allowed by law for such violations; and (4) is the criminal prosecution which is already pending and which seems to be maintainable (*Camp* v. *State,* 171 *Ga.* 25, 154 S. E. 436) an adequate remedy at law? However, we prefer to pass by these questions without any decision thereon in order to reach and decide the main and most important question involved, which is whether or not the owner of real estate is required by law to obtain a license from the Georgia Real Estate Commission before he is allowed to sell his own land for a legitimate and lawful purpose.

The law establishing the Real Estate Commission, defining its duties and conferring upon it licensing powers, was created by acts of the General Assembly (Ga. L. 1925, p 325; 1927, p. 307; 1929, p. 316), codified as Chapter 84-14 of the Code of 1933. Subsequent amendments of the law in 1931, 1941, 1943, 1949, and 1950 are irrelevant to any matters involved in the instant suit, Code §§ 84-1402, 84-1403 being the pertinent sections in the present case. Opposing counsel have sharply differed on whether in cases of conflict the original acts or the official Code must control. Counsel for the commission, relying upon the decision in *Norris* v. *McDaniel,* 207 *Ga.* 232 (60 S. E. 2d, 329), contend that in case of such conflict the original acts from which the Code was taken must control. We point out that in that case all the Justices did not concur, and hence the decision is not a binding precedent. Counsel for the defendants cite and rely upon the decision in *Sirota* v. *Kay Homes,* 208 *Ga.* 113 (65 S. E. 2d, 597), which has the concurrence of all the Justices and is a binding precedent. That decision squarely held that in case of conflict, the Code section, having been subsequently enacted by the legislature, constitutes a repeal by implication of any existing act which is irreconcilable therewith. We now reassert that ruling and apply it in the instant case, and refuse to go back of the Code of 1933 to consider any conflicting provisions of the acts from which the Code was taken.

Counsel for the commission contend, and the judgment complained of holds, that, in view of the fact that the defendants held only an equity of redemption in the land here involved because of the outstanding security deed which conveyed title to another for the purpose of securing a debt, these defendants were not "bona fide fee-simple holders," which, under Code § 84-1402, would relieve them of the necessity of procuring a license from the commission. If that position is sound and if, because of the existence of the security deed, the owners of the equity in the land can not be treated as the owners thereof, then the grantee of the security deed was the owner, and these defendants would occupy the position of sellers for the owner. If that be the factual status, then the first line of Code § 84-1402, defining the term "real estate broker," becomes relevant and material. It is there declared that, whenever used anywhere in this chapter, "real estate broker" means any person, firm, or corporation who "for another and for a fee, commission or other valuable consideration" sells, buys, rents, etc., real estate. Certainly it can not be contended that these defendants "for another and for a fee, commission or other valuable consideration" are selling the land here involved. Thus it is demonstrated that, if the defendants are not the owners of the land in question, they are not "real estate brokers" and have not violated the law relating thereto. However, the provisions of Code § 84-1403 unmistakably demonstrate that the legislature did not intend, by the use of the words "bona fide fee-simple holder" in Code § 84-1402, to require that the owner of land must hold the unencumbered title in order to be allowed to sell the same without securing a license from the Real Estate Commission authorizing him to do so. The language in Code § 84-1403 is comprehensive, unambiguous, and clearly states as follows: "The provisions of this Chapter shall not apply to any person, firm or corporation, who, as owner or lessor, shall perform any of the acts aforesaid with reference to property owned by them." The second and third paragraphs of the Constitution would forbid destruction, taking, or impairing private property by any State bureau under any pretended legislative powers. The Constitution declares "protection of person and property is the paramount duty of government, and shall be

impartial and complete," and "no person shall be deprived of life, liberty, or property, except by due process of law." The unshackled right to sell one's own property for a lawful use is within itself property protected by the Constitution and is beyond the reach of legislative impairment. With this constitutional safeguard of private property in mind, it is not difficult to understand that the legislature intended to exempt the owner regardless of any encumbrance that he might have upon his land from any of the provisions of the law applicable to brokers and salesmen of real estate, and this legislative intent is expressed is unmistakable terms in the foregoing quotation from Code § 84-1403.

The allegations in the present amended petition illustrate the perils to the owners of private property if they were required under the law to secure a license from this commission before selling their land. The petition of the commission alleged that the health of the purchasers of these lots will be injured unless the owners are required to obtain a license from the commission before selling the same. No purchaser of lots is complaining here; and even if, in spite of our recording statute, purchasers of land in Georgia might at some time be defrauded by the owner-seller, it is infinitely better that he endure such injury than that the liberties of free men be made dependent upon the whim of this governmental commission, which pretends to possess superior wisdom in the safeguard and protection of free men in the purchase and sale of private property that in no wise affects the public interest.

This commission further alleges by amendment that it is entitled to the relief sought because these defendants violated a zoning law in failing to obtain permission from the authorities designated by law to administer it. Such allegations amount to an open attempt to usurp the functions and powers of officials designated by the zoning law to administer and enforce it. Of course, such allegations constitute no basis for the relief sought here, but they illustrate the extent to which governmental agencies will sometimes go in claiming powers to invade the sacred constitutional rights of individuals. We unhesitatingly hold that the Georgia Real Estate Commission is wholly without power to require the owner of land to procure a license before

selling the same or to otherwise interfere with the complete freedom of such owner in the sale of his own land.

Because of arguments advanced by counsel for the commission, we think it well to discuss that portion of Code § 84-1402 dealing with subdividing a tract of land into 20 or more lots or offering for sale a tract already subdivided into 20 or more lots where the same is offered for sale through salesmen regularly or occasionally employed and paid salaries or commissions. In the first place, from what has been said above this provision could not refer to the owners of such land; and, in the second place, just preceding this provision, in the same section, it declares "provided however this provision shall not be construed to include the sale or subdivision into lots by the bona fide fee-simple holder of any tract or parcel of land." Immediately following the quoted language is a semicolon, then "also any person, firm, or corporation subdividing a tract of land into 20 or more lots," etc. The section will bear the construction that the reference to 20 or more lots comes under a preceding sentence, which declares that the provision of the section shall not be construed to include subdivisions by bona fide fee-simple holders, and, hence, shall not include subdivisions of 20 or more lots by them. Such construction would harmonize the overall intent of the law dealing with the subject, and with the unqualified declaration in Code § 84-1403 that the provisions of the entire chapter shall not apply to an owner or lessor who performs any of the acts described in the chapter.

From what has been said, the interlocutory injunction complained of is contrary to the law and the evidence, and the court erred in granting the same.

*Judgment reversed. All the Justices concur, except Atkinson, P.J., not participating. Head, J., concurs in the judgment only.*